## 11124

### PARLER v. DAVIS, DIR. GEN.

#### (115 S. E., 818)

1. CARRIERS—EVIDENCE HELD INSUFFICIENT TO ESTABLISH RELATION OF COMMON CARRIER AS TO BALE OF COTTON LEFT ON DEPOT PLATFORM.— Evidence that a farmer brought a bale of cotton to a railroad depot platform, where it was weighed and left without directions, as was the custom pending sale within a few days, *held* insufficient to establish the relation of common carrier on the part of the railroad.

2. CARRIERS—EVIDENCE HELD TO RAISE QUESTION FOR JURY WHETHER RAILROAD WAS LIABLE FOR COTTON AS BAILEE OR WAREHOUSEMAN.— Evidence that a farmer, in accordance with an established custom, left a bale of cotton on a depot platform after having it weighed, with the consent of the railroad company, with the expectation of its being shipped at a later date, *held* to create a question for the

NOTE—As to what amounts to delivery of, or assumption of control over, property essential to a bailment, see note 1 A. L. R., 394.

On presumption and burden of proof as to care or negligence in respect to subject of bailment, see note 43 L. R. A. (N. S.), 1168.

4—S. C.—123

jury whether or not the railroad company assumed the ·relation of warehouseman or bailee.

3. CARRIERS—RAILROAD ACQUIESCING IN PRACTICE OF LEAVING COTTON ON PLATFORM HELD LIABLE AS WAREHOUSEMAN.—A railroad which acquiesced in the practice among farmers of having their cotton weighed at a scale on the depot platform, and then leaving it on the platform without further instructions in contemplation of a sale and shipment within a few days; *held* liable as a warehouseman on the theory of constructive delivery for subsequent loss; since, the doctrine of constructive delivery being applicable to railroads as carriers, there is no reason why it should not be recognized in the case of warehousemen or bailees.

4. APPEAL AND ERROR—GROUNDS FOR DIRECTED VERDICT NOT URGED BELOW CANNOT BE FIRST ASSERTED ON APPEAL.—Grounds for a directed verdict not urged below cannot be considered when first asserted on appeal.

Before C. J. RAMAGE, Special Judge. Barnwell, June, 1922. Reversed and remanded.

Action by J. A. Parler against James C. Davis as Director General of Railroads. Judgment for defendant and plaintiff appeals.

*Messrs. Holman & Boulware,* for appellant, cite: *Defendant was charged as warehouseman:* 109 S. E., 397; 76 S. C., 476; 6 Cyc., 453. *Presumption of negligence from loss by warehouseman:* 99 S. C., 433. *No demand necessary where it would have been futile:* 104 S. C., 376.

*Messrs. Harley & Blatt,* for respondent, cite: *Warehouseman liable only for negligence:* 60 L. Ed., 840; 194 U. S., 427; 11 Wall., 129. *Reasonable time to remove goods is question of law for Court:* 1 Moore on Carriers (2d Ed.), 391.

February 7, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $186 damages, the value of a bale of cotton alleged to have been constructively delivered to the railroad company awaiting shipment, and negligently lost or shipped

away.   The case was tried by Special Judge Ramage and a jury June, 1922, at Barnwell.  At the close of all the evidence the presiding Judge directed a verdict in favor of the defendant.   The plaintiff has appealed, and by a single exception assigns error in said direction of a verdict, upon the ground that, under the pleadings, the testimony raised an issue of fact to be decided by the jury whether or not the defendant was liable for the loss of the cotton as a warehouseman or bailee.   The plaintiff specifically renounces any claim that the railroad company assumed the relation of a common carrier as to the bale of cotton, but insists that there was sufficient evidence that it had assumed the relation of warehouseman or bailee to require the submission of this issue to the jury.   The motion for a directed verdict, so far as the relation of warehouseman or bailee is concerned (the relation of common carrier being eliminated), was made upon the sole ground that the bale of cotton was placed upon the platform of the defendant without its consent.

The undisputed facts are as follows:

The plaintiff in the year 1920 was a farmer living near Olar, in Barnwell County, a station on the Seaboard Air Line Railway, then operated by the Director General of Railroads under federal administration; on December 20 he hauled a bale of cotton to Olar and carried it to the public weigher, who had his scales on the platform of the railroad company adjoining the station depot, evidently with the consent of the railroad company; the weigher weighed the bale, marked it in the plaintiff's name, and rolled it off of the scales on the platform; the plaintiff left it there, and reurned to his home; this was on Saturday, late in the afternoon; on Wednesday or Thursday of the following week, the plaintiff went to Olar for the purpose of selling the bale of cotton, and with a cotton buyer went to the platform for it; upon a search for it he was unable to find it; it has never turned up, and it is supposed that it was

either stolen or shipped away by mistake with other cotton. The plaintiff testified that upon other occasions he had pursued the same course with his cotton without inconvenience or loss. The agent of the railroad company showed in his testimony that he was familiar with this custom on the part of the public. There was no evidence that the agent of the railroad company was informed or had any knowledge that this particular bale had been so placed upon the platform. The plaintiff had no idea of shipping the cotton himself, but expected to sell it, and that the purchaser would give the necessary shipping directions.

Very clearly, under the case of *Behrman v. Railroad Co.,* 118 S. C., 48, 109 S. E., 397, the evidence does not tend to establish the relation of common carrier; and, as stated, the plaintiff makes no such claim. Under the evidence, however, there is some evidence that the cotton was placed upon the platform with the consent of the railroad company for the convenience of the owner, and with the expectation of its being shipped at a later time; and, that being so, the question whether or not the railroad company assumed the relation of warehouseman or bailee was one of fact for submission to the jury.

Even in the effort to establish the relation of common carrier, the doctrine of constructive delivery is well recognized. In *Copeland v. R. Co.,* 76 S. C., 476, 57 S. E., 535, the Court approved the following charge of the presiding Judge:

"Whenever a railroad company permits any one to put cotton on their platform for the purpose of shipping without objection on their part, and does anything to lead the parties putting the cotton there to believe that they had accepted it for the purpose of shipping it, and it is afterwards destroyed while in their possession, under those circumstances then the company would be liable."

If constructive delivery in the more drastic relation of common carrier be recognized, there is no reason why it

should not be recognized in that of warehouseman or bailee. If the railroad company had acquiesced in the custom of allowing the cotton to be placed and to remain upon its platform, anticipating the opportunity of transporting it and receiving the benefit of the freight charges, creating the impression that in the meantime they would care for it, even though such deposit was for the convenience of the owner, and without specific notice to the railroad company, it would assume the relation of warehouseman or bailee.

In 1 Hutch. Carr. (3d. Ed.), § 115, it is said:

"If, therefore, the parties agree that the goods may be deposited for transportation at any particular place and without an express notice to the carrier, such deposit will be a sufficient delivery; and proof of a constant and habitual practice and usage of the carrier to receive the goods when they are deposited for him in a particular place, without special notice of such deposit, is sufficient to show a public offer by the carrier to receive goods in that mode, and to constitute an agreement between the parties, by which the goods, when so deposited, shall be considered as delivered to him, without any further notice. Such a practice and usage are tantamount to an open declaration, a public advertisement by the carrier, that such a delivery should, of itself, be deemed an acceptance by him; and to permit him to set up, against those who had been thereby induced to omit it, the want of the formality of an express notice, which had been thus waived, would be sanctioning injustice and fraud. As where, for instance the delivery was upon a private wharf or dock, used exclusively by the carrier, and upon which it had been its custom and constant usage to receive goods left there for transportation by it, such a deposit, in the usual and accustomed manner, would be constructive notice, and would be regarded as sufficient delivery, though the goods were not left in charge of any of its servants."

The motion for a directed verdict was not made upon the ground urged by the respondent upon this appeal, that there was no evidence tending to show negligence on the part of the railroad company; and of course it cannot now be considered in support of the directed verdict.

The judgment is reversed, and a new trial ordered.